UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15-CR-00250-SNLJ |
| | ) | |
| CHARLES S. JAMES | ) | |
| a/k/a SAM JAMES, | ) | |
| | ) | |
| Defendant. | ) | |

## SENTENCING MEMORANDUM
## OF DEFENDANT SAM JAMES

On March 10, 2016, pursuant to a plea agreement, Defendant, Charles S. (Sam) James, pled guilty to a misdemeanor violation of the Lacey Act, 16 U.S.C. §3371 *et seq.*  Sentencing is scheduled for July 6, 2016.

Mr. James respectfully requests that this Court sentence him in accordance with the plea agreement entered into between him and the Government.   Under the terms of the agreement, the Government and Mr. James agreed to recommend that the Court impose a fine in the amount of $30,000.  The parties also agreed to recommend that the Court place Mr. James on probation for one (1) year, subject to two special conditions:  that Mr. James publish in the Missouri Deer Association Newsletter a one-half page advertisement discussing chronic wasting disease, and that Mr. James perform forty (40) hours of community service, at facilities of the Missouri Department of Natural Resources or as otherwise approved by the probation officer.  Mr. James and the Government further agreed that Mr. James forfeit to the Government the sum of $5,000, in lieu of forfeiture of the vehicle used by Mr. James in connection with the offense.

The sentence recommended by the parties in the plea agreement is consistent with the United States Sentencing Guidelines advisory guidelines, with two exceptions:  (1) the fine agreed upon by the parties exceeds the high end of the Guideline fine range by $10,000; and (2) the Guidelines provide that the conditions of probation should include a period of intermittent confinement, community confinement or home detention (collectively "intermittent or home detention"), or some combination of the three.

For the following reasons, Mr. James respectfully requests that this Court follow the parties' recommendation, impose the higher, agreed-upon fine, and not require intermittent or home detention.  In addition, Mr. James respectfully requests, due to the nature of his employment, that the Court not impose, as a condition of probation, any restrictions on his ability to possess a firearm.

**Factual Background**

For many years, Mr. James has been engaged in the related activities of deer-breeding and deer-hunting in the state of Missouri.  At the present time, Mr. James is involved with Timber Hollow Whitetail Ranch, located in Callaway County, which is operated by Mr. James's son with assistance from Mr. James.  Deer-breeding activities take place at Timber Hollow.

In addition, Mr. James is involved with Foggy Bottom Whitetail Ranch, also in Callaway County, which is operated as a hunting preserve.  Mr. James, among other things, interacts with clients who come to Foggy Bottom to engage in deer hunting.  Over the years, Mr. James has frequently sponsored "Safari Wish Hunts" for individuals and groups with special needs who have expressed the desire to go deer hunting but who would otherwise lack the opportunity.  These special-needs hunters have included sick and terminally-ill children, wounded war veterans and at least one blind man.

The offense giving rise to this case resulted from a contract entered into during the spring of 2013 between Mr. James and an individual residing in Florida.  The contract called for Mr. James to sell to the Florida resident 24 deer.

Mr. James arranged for a veterinarian to come to Timber Hollow and examine the 24 deer, and the examination occurred in July 2013.  On July 8, 2013, the veterinarian signed a Certificate of Veterinary Inspection listing the 24 deer which were the subject of the contract.  Later that month, Mr. James delivered 13 of the deer to Florida.  The 11 remaining deer were too young to travel at that time.  Mr. James delivered the remaining 11 deer in October 2013.

In September 2013, between the two deliveries, the Florida Fish and Wildlife Conservation Commission adopted a regulation which prohibited the importation of deer into the state.  When Mr. James delivered the remaining 11 deer in October of that year, he, in the exercise of due care, should have known that his delivery violated that prohibition.

**Discussion**

Congress has mandated that a sentencing court "impose a sentence sufficient, *but not greater than necessary*, to" achieve certain specified objectives of sentencing.  *See* 18 U.S.C. § 3553(a) (emphasis added).

Prior to 2005, the Court, in general, was required to impose a sentence in accordance with the federal sentencing guidelines.  However, "[i]n *United States v. Booker*, 543 U.S. 220, 224, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Supreme Court ruled that mandatory application of the Guidelines based on judicially-found facts violated defendants' Sixth Amendment rights." *United States v. Wadena*, 470 F.3d 735, 737 (8th Cir. 2006).  Accordingly, the Guidelines are no longer mandatory.

3

The Court of Appeals has laid out the methodology that a sentencing Court should follow, post-*Booker*, when determining the sentence to impose.  First, the Court must determine the advisory guideline sentencing range; second, the Court must determine the appropriateness of any upward or downward departures within the framework of the guidelines; and, third, the Court must decide whether to vary from the advisory guideline range based on the sentencing factors set forth in Section 3553(a) of Title 18.  *See, e.g., United States v. VandeBrake*, 679 F.3d 1030, 1039 n.7 (8th Cir. 2012); *United States v. Lozoya,* 623 F.3d 624, 625-26 (8th Cir. 2010).

### I. Guideline Sentencing Range

The PSR and the parties all agree that the Total Offense Level in this case is 10.  *See* PSR at ¶ 36; Guilty Plea Agreement at p. 5.  Mr. James falls within criminal history category I.  PSR at ¶ 40.  For offense level 10 and criminal history category I, the advisory guideline sentencing range is 6 -12 months.  *Id.* at ¶ 71.  Because the advisory guideline range is in Zone B of the Sentencing Table, the Court may impose probation.  *Id.* at ¶ 78.  While the Guidelines provide that, for an offense in Zone B, a sentence of probation should include as a condition a period of intermittent or home detention, *see id.*, this Court may vary from the advisory guideline range and impose a sentence of probation without such a condition.  *See id.* at ¶ 93.  As stated above, Mr. James respectfully contends that this Court should so vary, should approve the recommendations of the parties as expressed in the Guilty Plea Agreement, and should sentence Mr. James to probation without imposing intermittent or home detention as a condition of the probation.

## II. Consideration of Factors Pursuant to 18 U.S.C. § 3553(a)

A sentencing court's ultimate task involves determining the actual sentence by applying the factors listed in 18 U.S.C. § 3553(a). *Lozoya*, 623 F.3d at 626.[1] Mr. James respectfully suggests that application of the statutory factors to the circumstances of this case supports a sentence of probation.

First, the nature and circumstances of the offense, and the history and characteristics of Mr. James, support probation in this case. *See* 18 U.S.C. § 3553(a)(1). The offense which Mr. James committed in this case is a misdemeanor, is non-violent and rests in part upon negligence. In addition, Mr. James wishes to point out that all 24 of the deer which were the subject of the contract between him and the Florida resident were inspected by a veterinarian and were properly listed on the Certificate of Veterinary Inspection. Had all of the deer been delivered to Florida within thirty (30) days of the inspection, no crime would have been committed.[2]

---

[1]The Supreme Court has summarized the section 3553(a) factors as follows:  (1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing, namely (a) "just punishment" (retribution), (b) deterrence, (c) incapacitation, and (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution. *See Rita v. United States*, 551 U.S. 338, 347-48 (2007).

[2]Mr. James respectfully suggests that the instant offense is of a different, and less severe kind, than an offense involving the sale and/or transportation of deer in which the parties do not generate at all any of the required paperwork. Mr. James acknowledges that, more than ten (10) years ago, he participated in such a transaction involving the transportation of deer into Arkansas where neither he nor the Arkansas resident obtained the required Arkansas permits. See PSR at ¶ 39. In the instant offense, Mr. James did obtain the required permits and delivered some of the deer within the required time period, and then completed the transaction when he should have known that, in the interim, Florida had banned the importation of deer. Mr. James further acknowledges that his Arkansas experience should have made him more careful to ascertain and comply with the Florida law. He does, however, respectfully suggest that the instant offense does not constitute a repeat of that earlier behavior.

Mr. James also wishes to address Paragraph 42 of the PSR, as to which Defendant has filed an objection. The PSR incorrectly indicates that Mr. James was arrested on June 20, 2015, in connection with a state court case in the Circuit Court of Linn County, Missouri. In actuality, Mr. James, on or about June 23, *2016*, received via regular mail at his home an envelope, post-marked June 21, 2016, from the "Consolidated Circuit Court of Linn County" in Linneus, Missouri. The envelope contained a Summons, directing Mr. James to appear in Court on July 21, 2016. The envelope also contained a Complaint, charging Mr. James with conspiracy to commit forgery, allegedly committed on or about February 19, 2015. A Probable Cause Statement, signed by Missouri Conservation Agent Todd Houf, alleges that the forgery relates to a sale of a deer to Mr. James on October 19, 2014.  (continued)

5

In addition, Mr. James's personal characteristics support his requested sentence in this matter. From the PSR, and from the letters written to the Court on Mr. James's behalf (collectively attached hereto as Exhibit 1), this Court can conclude that Mr. James is a man of good character, kind to others, devoted to his family, involved in his community and giving of his time for charitable and community causes.

A sentence of probation in this case would promote the objectives of sentencing as identified in 18 U.S.C. § 3553(a)(2). First, such a sentence would reflect the seriousness of the offense, promote respect for the law, and provide just punishment. *See* 18 U.S.C. § 3553(a)(2)(A). The Supreme Court, while acknowledging that a custodial sentence is more severe than probation, has stated, "Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty." *Gall v. United States*, 552 U.S. 38, 48 (2007). Thus, the Court appears to have rejected a view that dismisses a sentence of

---

Mr. James had heard some time ago that an agent had questioned a transaction, but prior to receiving the Summons in the mail Mr. James had no idea that a criminal charge was pending or even under consideration. Mr. James, and his undersigned counsel, have reviewed the Complaint and the Probable Cause Statement. While certainly further investigation remains to be done, based upon the information currently available, Mr. James and the undersigned do not believe that the newly-brought case has merit, and Mr. James intends to plead not guilty and defend against the charge.

Mr. James respectfully believes that the Linn County case should not affect the Court's sentencing decision in this case. On March 10, 2016, the day Mr. James and the Government signed the Guilty Plea Agreement herein, the investigation that led to the new state charge had been underway for a substantial period of time. The Conservation Agent who signed the Probable Cause Statement was Todd Houf. Notably, Agent Houf was also a primary, if not the primary, Missouri agent who worked directly and closely with the United States Fish and Wildlife Service to develop the instant case now before this Court. In other words, at the time the Government negotiated the Guilty Plea Agreement in this case, a case largely developed by Agent Houf, Agent Houf was also a lead agent or the lead agent in the separate state investigation of which Mr. James was not aware. Under these circumstances, the Government, at the time it entered into the Guilty Plea Agreement with Mr. James in this case, should be deemed to have known about the matter giving rise to the recently-initiated Linn County matter, and the eleventh-hour emergence of the Summons mailed to Mr. James last week should not alter the Court's decision in this case.

In addition, and as stated in Defendant's Objection to Paragraph 42 of the PSR, Defendant contends that it would be unfair to him, and impracticable and burdensome upon the parties and this Court, to attempt to resolve in this sentencing proceeding newly-arising matter better adjudicated in the Court in which the charge has been brought and after Defendant has had sufficient time to further investigate the matter and present his defense. Accordingly, Defendant respectfully requests that this Court not consider the allegations discussed in Paragraph 42 when determining the sentence in this case.

probation as an overly-lenient slap on the wrist.  *See id.* at n.4 ("[p]robation is not granted out of a spirit of leniency . . . . probation is not merely 'letting an offender off easily'") (quoting Advisory Council of Judges of National Council on Crime and Delinquency, Guides for Sentencing 13-14 (1957)).  A sentence of probation, under the facts and circumstances of the present case, would also afford adequate deterrence and protect the public from further crimes. *See* 18 U.S.C. § 3553(a)(2)(B) and (C).  In addition, nothing in the record before the Court suggests that Mr. James requires "needed educational or vocational training, medical care, or other correctional treatment." 18 U.S.C. § 3553(a)(2)(D), that only a sentence of incarceration can provide.

A sentence of probation is available in this case, pursuant to both the statute of conviction and the sentencing guidelines.  *See* 18 U.S.C. §3553(a)(3); *see also* PSR at ¶¶ 76, 78.  While the Guidelines call for intermittent or home detention as a condition of probation, under *Booker* the Court may exercise its discretion and not impose such a condition.

A sentence of probation in this case would be consistent with sentences imposed in similar cases, thereby avoiding unwarranted sentencing disparity.  *See* 18 U.S.C. § 3553(a)(6). According to statistics published by the United States Sentencing Commission, federal courts sentenced 148 defendants in Environmental and/or Wildlife cases.[3]  Of those, 93 defendants (nearly 63 percent) were placed on probation.[4]

Moreover, a sentence of probation without a condition requiring intermittent or home detention would also be consistent with sentences imposed in similar cases.  Of the 93

---

[3] 2015 Annual Report, Table 12, available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2015/Table12.pdf.

[4] *Id.*  Moreover, the 148 number includes both felonies and misdemeanors, so the percentage of misdemeanor offenders being placed on probation is undoubtedly higher than 63 percent.

environmental and/or wildlife defendants placed on probation nationwide during fiscal year 2015, 74 defendants (80 percent) received only probation, as opposed to probation combined with a form of confinement.[5]  Within the Eastern District of Missouri, during fiscal year 2015, in *all* cases in which a defendant was sentenced to probation, more than two-thirds (61 out of 90) involved probation only, with no form of confinement.[6]

The fact that a sentence in this case of probation without confinement would constitute a variance from the Guidelines would not make such a sentence inconsistent with other sentences. More than half of all of the environmental and/or wildlife cases sentenced during fiscal year 2015 resulted in a sentence below the advisory guideline range.[7]  And, in the Eastern District of Missouri, nearly 59 percent (325 out of 554) of the defendants sentenced during fiscal year 2015 received a sentence below the advisory guideline range.[8]

In short, a sentence of probation without intermittent or home confinement, in this misdemeanor case, would by no means result in unwarranted sentencing disparity compared to cases involving defendants with similar records who have been found guilty of similar conduct.[9]

---

[5] *Id.*

[6] 2015 Annual Report, Fiscal Year 2015 Guideline Sentences, Missouri Eastern, available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2015/stats_MOE.pdf.

[7] 2015 Annual Report, Table 27A, available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2015/Table27a.pdf.

[8] 2015 Annual Report, Fiscal Year 2015 Guideline Sentences, Missouri Eastern, available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2015/stats_MOE.pdf.

[9] The final factor to be considered under section 3553(a) is "the need to provide restitution to any victims of the offense."  18 U.S.C. § 3553(a)(7).  This factor does not apply in this case, as restitution is not an issue.  *See* PSR at ¶ 83; Guilty Plea Agreement at p. 8.

8

Mr. James suggests that a consideration of the factors enumerated in Section 3553(a) demonstrates the appropriateness of the sentence recommended by the parties in the plea agreement.

### III.  Conditions of Probation

A. <u>Intermittent or Home Detention</u>:  As discussed above, Mr. James respectfully requests that this Court sentence him to probation without imposing as a condition of that probation intermittent or home detention.  To summarize, Mr. James believes the following reasons support his request:

1. The agreement of the parties in this case.

2. Mr. James's good character, as reflected in the letters of support written on his behalf.

3. Mr. James's agreement to pay a fine above the high end of the applicable advisory sentencing guideline fine range.

4. Mr. James's agreement to pay an additional amount ($5,000) in lieu of forfeiture of a vehicle, thereby sparing the Government the expense of taking possession of a vehicle and selling it in order to reduce the forfeiture to cash.

5. Mr. James's agreement to two additional conditions of probation, *i.e.*, the placing of an ad in the Missouri Deer Association Newsletter and the performance of community service.

This last argument should not be overlooked.  The relevant statute allows a Court, when placing a defendant on probation, to impose conditions "to the extent that such conditions are reasonably related to the factors set forth in [18 U.S.C.] section 3553(a)(1) and (a)(2) and to the extent that such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in [18 U.S.C.] section 3553(a)(2)."  18 U.S.C. §

9

3563(b).  In the instant case, the additional conditions of probation set forth in the Guilty Plea Agreement – the ad and community service – were carefully considered and bear a relationship to the facts of the case and the need for Mr. James to rectify, as best he can, the wrong he did when he committed the offense.  In contrast, intermittent or home detention would not be reasonably related to the nature of the case or the history of Mr. James, nor would it serve the purposes of sentencing identified by Congress in section 3553(a)(2) of Title 18.

  B. <u>Firearm Restriction</u>:  Mr. James respectfully requests that, if this Court sentence him to probation, the Court not impose as a condition of that probation any firearms restriction.  The relevant statute identifies a firearm restriction as a discretionary condition of probation that a Court may impose, *see* 18 U.S.C. § 3563(b)(8), but, again, only "to the extent that such conditions are reasonably related to the factors set forth in [18 U.S.C.] section 3553(a)(1) and (a)(2) and to the extent that such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in [18 U.S.C.] section 3553(a)(2)."  18 U.S.C. § 3563(b).  *See also* USSG § 5B1.3(d)(1) (recommending a firearm restriction as a condition of probation "[i]f the instant conviction is for a felony, or if the defendant was previously convicted of a felony or used a firearm or other dangerous weapon in the course of the instant offense").

  In *United States v. Voda*, 994 F.2d 149 (5th Cir. 1993), the defendant pled guilty to one count of negligent discharge of a pollutant into navigable water of the United States, a misdemeanor.  *See Voda*, 994 F.2d at 150.  The District Judge sentenced him to probation and included a number of conditions in connection with the probation.  One condition consisted of a prohibition against possession of a firearm by Mr. Voda during the term of the probation.  *Id.*

10

Mr. Voda appealed, claiming that the District Court erred in imposing that condition. The Court of Appeals agreed, characterizing the imposition of that condition as an abuse of discretion. *Id.* at 153-54.  The Court of Appeals quoted the language from 18 U.S.C. § 3563(b) (set forth above) that a condition of probation must be related to the nature of the offense, the history of the defendant, and the purposes of sentencing.  The Court cited a number of cases, including one from the Eighth Circuit, in which conditions of probation were found to be improper or excessive in light of the facts and circumstances of the case for which the defendant was being sentenced. *Id.* at 153 (citing *United States v. Prendergast*, 979 F.2d 1289 (8th Cir. 1992) (condition that wire fraud convict not possess alcohol excessive since no evidence showed that convict abused alcohol)).

The Court of Appeals went on to observe:

> Neither Voda's charged offense nor the relevant conduct involving that offense had any relevance to or connection with the use or possession of any firearm or dangerous weapon.  Voda was convicted of a nonviolent misdemeanor.  No persons were directly endangered.  Voda's offense involved merely negligent misconduct, and thus does not suggest that Voda had any intent to harm others or to violate the law.  No evidence in the PSR indicates that Voda has any tendency to violence in general or to abuse of (or carelessness with) firearms or that he poses any danger whatever to the public . . . .  The chance that Voda might shoot his probation officer is as unlikely here as in any misdemeanor conviction.  Since Voda's past behavior does not indicate that his possession of firearms makes him dangerous, there is no need to impose this condidtion to protect the public from future crimes by Voda.  Imposing this condition of probation also does not serve the punishment and deterrence goals of sentencing under the Guidelines.

*Voda*, 994 F.2d at 153-54.

The Fifth Circuit's words in *Voda* apply with great force to Mr. James as well.  Nothing in the record suggests the need for a firearms restriction in this case.  Moreover, a firearms restriction in this case would impose hardship on Mr. James and impact his ability to earn a living.  His involvement with hunts at the Foggy Bottom deer preserve generally requires him to

11

be around firearms.  While on supervised release in this case, Mr. James has been subject to, and has abided by, a firearms restriction.  Doing so, however, has caused, at best, inconvenience and, at worst, disruption to the business and its clients.  Mr. James respectfully hopes that, if this Court places him on probation, this Court not impose a firearms restriction as a condition of that probation, since the relevant statute, the Guidelines, and case law all indicate that such a restriction would be legally inappropriate.

## Conclusion

For the foregoing reasons, Mr. James respectfully suggests that a sentence of probation represents a sentence sufficient but not greater than necessary to carry out the statutory objectives of sentencing.  Accordingly, Mr. James respectfully asks the Court to follow the recommendation of the parties, including the Government, and sentence him to probation in this case, with the conditions set forth in the Guilty Plea Agreement, without intermittent or home detention and without a firearms restriction.  Mr. James further acknowledges, as he agreed in the Guilty Plea Agreement, that his sentence should include a fine of $30,000, and that he should forfeit the sum of $5,000 in lieu of forfeiture of the vehicle used in the offense.

**CAPES, SOKOL, GOODMAN & SARACHAN, P.C.**

By: __/s/ *Sanford J. Boxerman*__
Sanford J. Boxerman #37436MO
7701 Forsyth Boulevard, 12th Floor
St. Louis, Missouri  63105
Telephone:  (314) 505-5470
Facsimile:  (314) 505-5471
boxerman@capessokol.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

      The undersigned certifies that a copy of this Sentencing Memorandum was filed on the 30th day of June, 2016, via the Court's electronic case filing system.  A copy of the document was also transmitted on the same date via email to Ryan D. Wilke, Senior U.S. Probation Officer (Ryan_Wilke@moep.uscouirts.gov).

                                           */s/ Sanford J. Boxerman*